■ SAMUEL R. WARNER, Respondent, v. RICHLOU ASSOCIATES, Appellant. — In an action to recover a brokerage commission, defendant appeals from so

much of a judgment of the Supreme Court, Queens County, dated August 25, 1971 and made after a nonjury trial, as in favor of plaintiff. Judgment affirmed insofar as appealed from, with costs. No opinion. Hopkins, Gulotta and Brennan, JJ., concur; Munder, J., dissents and votes to reverse the judgment insofar as appealed from and to dismiss the complaint, with the following memorandum, in which Rabin, P. J., concurs: In this action to recover a real estate commission for the lease of premises owned by defendant in Brooklyn, the trial court found that plaintiff had produced a prospective tenant, viz., Ward Foods, Inc., who was able, ready and willing to meet the terms set by defendant. Based on that finding, plaintiff was awarded a recovery of $6,000. In my opinion, the proper test in a brokerage case is whether the parties reached agreement on *all* the *essential terms* of the lease or sale (*Kaelin* v. *Warner*, 27 N Y 2d 352). The record before us shows that did *not* occur here. What the record shows is that Ward's management personnel were satisfied with the location and general physical layout of the premises. The record also is fairly clear that the rental price per square foot was agreed upon. But that is where agreement ended. The premises were to be altered by adding rooms, partitions, toilet facilities, etc., suitable for Ward's needs. The plans for these alterations were to be prepared by Ward's engineers and sent to defendant for approval. These were never finalized. Part of the reason was that Ward's legal department raised a question about the certificate of occupancy. The property was being used as a garage and filling station; and, in order to be used for the purposes intended by Ward, a variance had to be granted by the New York City Board of Standards and Appeals. The legal department advised against occupancy by Ward until the variance would be granted and a new certificate of occupancy issued. There was no certainty how long this would take. It is obvious therefore that the parties had not agreed upon *when* the tenancy was to start. The evidence, and this includes plaintiff's own testimony, is that Ward (probably through its legal department) was to prepare the lease. This was not done; and the reason, in my opinion, is that there were too many unsettled items. One of defendant's principals, Rosenberg, testified that he had agreed to apply for the certificate of occupancy when the terms of the lease would be agreed upon. He never applied because the parties never agreed. Rosenberg also testified that in September, 1968, which would have been *after* the parties had agreed upon the rental price, Ward's representatives made one or more proposals in an effort to skirt the problem of the certificate of occupancy. These included an alleged offer to occupy the premises at one-half the agreed-upon rental until the certificate of occupancy would be obtained and to vacate if the certificate of occupancy were not obtained. It seems clear to me that plaintiff did in fact produce a prospect who genuinely was interested in leasing defendant's premises. Unfortunately for plaintiff, too many problems arose so that the parties were not able to agree on all the essential terms. There being no claim or proof that the failure to agree resulted from defendant's bad faith, plaintiff's complaint should have been dismissed.